UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TKK USA INC., f/k/a The Thermos Company,<br><br>    Plaintiff,<br><br>    v.<br><br>SAFETY NATIONAL CASUALTY CORPORATION,<br><br>    Defendant. | No. 10 C 8146<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

This case centers on whether Defendant Safety National Casualty Corporation ("Safety National") has a duty to reimburse its insured, the Plaintiff TKK USA Inc. ("Thermos"). The parties have filed cross-motions for summary judgment, and no facts are in dispute. For the following reasons, Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

**I. STATEMENT OF FACTS**

The facts of this case are not in dispute. Safety National sold Thermos policy number AGC-4551-IL on August 31, 1995 ("the Policy"). Thermos purchased a continuation of the Safety National Policy through August 31, 1997.

On August 28, 2009, Juanita M. Perkins, as Special Administrator of the Estate of Blannie Perkins, filed a complaint against "Thermos-King, Inc." and other defendants in the Circuit Court of the Third Judicial Circuit of Madison County, Illinois ("the underlying complaint"). Blannie Perkins was an employee at the Thermos employee in Freeport, Illinois, and his last day of employment with Thermos was February 10, 1997. The underlying complaint

seeks damages under Illinois common law, alleging two counts of common law negligence, and four counts of intentional and willful misconduct by Thermos. Specifically, this complaint alleges that Blannie Perkins was exposed to asbestos-containing products in the course of his employment that were supplied by Thermos and used throughout the facility. Such exposure, it is alleged, resulted in his death from mesothelioma.

On October 14, 2009, Thermos provided notice to Safety National of the lawsuit. On March 23, 2010, counsel for Thermos spoke with Safety National's claims analyst and advised her that Thermos expected to exhaust the Safety National Policy's $275,000.00 self-insured retention in the defense of the *Perkins* lawsuit and requested that Safety National provide a coverage determination. On August 25, 2010, Safety National forwarded a letter to Thermos declining coverage under the policy. Thermos asked that Safety National reconsider its denial of coverage, but Safety National maintained its position that Thermos was not entitled to coverage under the policy.

**II. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

**III. DISCUSSION**

The parties agree that Safety National owes Thermos no duty to defend. Instead, the question before me is whether Safety National must reimburse Thermos for the cost of defending the *Perkins* lawsuit. I find that they must.

Safety National argues that the Policy does not impose any duty to reimburse Thermos for defense and investigation costs relating to the underlying lawsuit because any such duty would only be triggered if a claim was filed against Thermos under the Workers' Compensation or Employers' Liability Laws of Illinois. Safety National argues that because the underlying plaintiff attempts to recover under a theory of negligence, the suit does not arise under either Illinois' Workers' Compensation or Employers' Liability laws. Accordingly, Safety National's indemnity obligations have not been triggered. Thermos contends that the negligence suit filed does in fact fall under the Employers' Liability laws, and therefore Defendants are obligated to reimburse them for the cost of the defense.

A. Liability Alleged in the Complaint

The Policy requires Safety National to reimburse Thermos' costs incurred in defending claims brought under either the Workers' Compensation Laws of Illinois or the Employers' Liability Laws of Illinois. Neither Employers' Liability Laws, nor Workers' Compensation Laws are defined terms in the Policy. The underlying complaint alleges negligence as well as intentional and willful misconduct. As an initial matter, the claims for intentional or willful misconduct fall directly within the Policy's exclusion for damages because of "serious and willful misconduct, including intentional acts or omissions resulting in injury." However, under Illinois law, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer must pay defense costs for the entire suit, even if only one of the theories is potentially within the coverage of the policy. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). Accordingly, a finding that the negligence claims in the *Perkins* lawsuit fall within the Policy coverage will obligate Defendant to pay the defense costs for the entire suit.

Thermos argues this negligence claim, even if wholly groundless, constitutes a claim under Illinois' Employer Liability Laws. Specifically, Thermos contends that this term refers to laws other than Illinois' workers' compensations statutes (i.e. other than the Occupational Diseases Act ("ODA") or Workers' Compensation Act ("WCA")), and includes the negligence claim asserted against Thermos in the lawsuit. As Thermos contends, under the Policy, "Workers' Compensation Law" refers to the ODA and WCA, and "Employers' Liability Law" means law other than the ODA or WCA that imposes liability on an employer or workplace-related injuries. I agree.

4

When interpreting insurance policies, Illinois courts ascribe a term its "plain, ordinary, and popular meaning." *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005). If "policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer." *Id*. The explicit language of the Policy states that the Policy applies to loss sustained because of liability imposed by the Workers' Compensation or Employers' Liability Laws of Illinois. "Illinois courts have refused to extend the common law liability of an employer to include accidental injuries resulting from the reckless negligence of the employer." *Wells v. IFR Engineering Co.*, 617 N.E.2d 204, 205 (Ill. App. Ct. 1993). Indeed, the Workers' Occupational Diseases Act provides the exclusive remedy for an employee that contracts an occupational disease. 820 Ill. Comp. Stat. § 310/1(f) (2004); *Hartline v. Celotex Corp.*, 651 N.E.2d 582 (1995).

As the Seventh Circuit recently noted, a "workers compensation and employer liability policy is a standard liability insurance policy designed to insure an employer primarily for liability under workers' compensation laws, but secondarily for liability for workplace accidents not covered by such laws." *Hayes Lemmerz Intern, Inc.*, 619 F.3d 777, 778-79 (7th Cir. 2010) (applying Indiana law). Claims filed under workers' compensation laws proceed before an administrative agency. *Id*. Complementing workers' compensation laws, employer liability laws "sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief." *Id*. Under such a construction, "Employer Liability Laws," as recited in the Policy, cover claims filed outside of workers' compensation laws, such as the ODA. Although it is true that the ODA offers the exclusive remedy for an employee that contracts an occupational disease, the underlying lawsuit here seeks damages under a common law theory of

5

negligence. That such a claim will likely be unsuccessful because the ODA offers the exclusive remedy is of no consequence. The Policy also applies to the costs associated with defendant claims that are "wholly groundless, false, or fraudulent." Moreover, the Policy covers "bodily injury by occupational disease" to employees "engaged in the business operations of [Thermos]." The allegations contained within the *Perkins* complaint allege that the Decedent suffered an "occupational disease" that was "caused or aggravated by the conditions of employment" within the meaning of the Policy.

The parties have cited no cases in which a court applying Illinois law has considered an insurer's denial of coverage on the grounds that an underlying claim may be barred by the exclusive remedy provision of the ODA. Other courts have rejected this argument as applied to workers' compensation statutes of other states. *See Indus. Door Co., Inc. v. The Builders Group*, No. A09-2065, 2010 WL 2900312, at *4 (Minn. Ct. App. July 27, 2010) ("Even if a claim would fall within the scope of coverage only through a development in the law, the insurer still has the obligation to develop facts and argue against adoption of the proposed doctrine."); *Panther Mach., Inc. v. Accident Fund Ins. Co. of Am.*, No. 264454, 2007 WL 258313, at *2 (Mich. Ct. App. Jan. 30, 2007) ("coverage arises when coverage is arguable, even if the claim is groundless or frivolous.")

The terms of the Policy dictate that Safety National is obligated to reimburse Thermos for the costs of its defense. The facts in the underlying complaint allege liability under the Policy, even if the claim is groundless or frivolous. Furthermore, this court resolves in favor of the insured any doubt as to whether the Complaint alleges liability under a Policy. Accordingly,

6

Plaintiff's motion for summary judgment is granted and Defendant's motion for summary judgment is denied.

### B. Motion For Attorney Fees

Thermos also moves to recover attorney fees incurred in bringing this action, as well as other statutory damages. Section 155 of the Illinois Insurance Code provides that a court may award attorney fees and other damages in an insurance coverage action where it appears to the court that the insurance company's actions have been "vexatious and unreasonable." 215 ILCS 5/155. An insurer's actions are "vexatious and unreasonable" when an insurer denies coverage for a claim for which there is no "bona fide dispute" over coverage. *Bedoya v. Il. Founders Ins. Co.*, 688 N.E.2d 757, 764-65 (Ill. App. Ct. 1997). An insurer's conduct is not vexatious and unreasonable if: (1) there is a *bona fide* dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000).

Thermos relies on Safety National's claim denial correspondence stating that it would deny coverage based on its belief that the claim would be denied because of the ODA's exclusive remedy provision. While Safety National appears to have abandoned this line of thought, raising it neither in its answer nor cross-motion for summary judgment, this rationale runs afoul of the plain language of the Policy, as well as established Illinois law that coverage cannot be declined simply because the merits of the underlying suit are meritless. Good faith disputes are not grounds for Section 155 liability. *Citizens First Nat'l Bank*, 200 F.3d at 1110.

7

In its motion for summary judgment, Safety National raised one primary justification for its refusal to pay Thermos' defense costs: that "Employers' Liability Laws" means the ODA and WCA exclusively. I do not find that this position rises to the level of vexatious or unreasonable conduct. Instead, there is a *bona fide* dispute over coverage, with the parties disagreeing as to the interpretation of the coverage provided under the Policy. Accordingly, Thermos' motion for attorney fees is denied.

## IV. CONCLUSION

For the foregoing reasons, Thermos' motion for summary judgment is granted. Thermos' motion for fees is denied. Safety National's cross-motion for summary judgment is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: June 29, 2011